UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASMINE BARNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 21-CV-423-TCK-JFJ |
| VAPOR MAVEN OK 1, LLC; HARMINDER THIND; GURPREET K. THIND; FRESH LEAF, LLC; VAPOR MAVEN FRANCHISING, LLC; VAPOR MAVEN AR, LLC; VAPOR MAVEN MS, LLC; VAPOR MAVEN E-JUICE, LLC; JASLEEN ENTERPRISES, LLC; and MANAV ENTERPRISES, LLC, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Defendant Gurpreet K. Thind's (Ms. Thind) Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. 22) for failure to state a claim upon which relief may be granted. Plaintiff Jasmine Barnett (Plaintiff) filed a Response (Doc. 26), and Ms. Thind filed a Reply (Doc. 29).

**I.   BACKGROUND**

Plaintiff Jasmine Barnett was an employee of Defendants from April 2014 until October 7, 2019. (Doc. 2-2 at 5, 7). During that time, Plaintiff states that she was assigned to so many different job titles and duties that she does not know what her official job title was at the termination of her employment. (*Id.* at 5). According to the Complaint, Vapor Maven is a self-described "strong vape-store chain" with nearly 100 stores across multiple states, including Oklahoma, Arkansas, Kansas, Texas, and Missouri. (Doc. 2-2 at 4). In addition to its retail operations, Vapor Maven also manufactures and distributes tobacco vapor products as well as cannabis and kratom plant products

in locations where such products are legally sold. (*Id.*) Vapor Maven does not in itself exist as a corporate entity; rather, Plaintiff asserts that all Defendants operate, function, and conduct business as a joint venture or general partnership under the tradename "Vapor Maven." (Docs. 2-2 at 4; 26 at 2-3). In particular, the Complaint alleges that Defendants share in profits generated under the Vapor Maven name; share common property, market Vapor Maven products; operate business locations as Vapor Maven; require employees to wear Vapor Maven uniforms; provide employees with an email under the Vapor Maven domain; require employees to conduct business on behalf of one or more of the other named Defendants in order to generate income under the Vapor Maven tradename; and shared in control over employees, including the power to hire, fire, supervise, schedule, and regulate conditions of employment. (Doc. 2-2 at 4-5). Defendants Harminder and Gurpreet Thind are spouses, and Plaintiff contends that they manage and oversee the Vapor Maven employees and exhibit shared control over the Vapor Maven enterprise. (Doc. 26 at 4).

When Plaintiff was initially hired, she states that she was paid at an hourly rate of $16.00 per hour. However, on April 1, 2019, Plaintiff began receiving a salary of $1,000 per week, which she believes was for the sole purpose of avoiding compensation for the overtime hours she was working. (Doc. 2-2 at 6). Plaintiff maintains that she regularly worked in excess of 40 hours per week during her employment with Defendants, and she eventually made complaints to her supervisors regarding nonpayment of overtime. (*Id.*) Plaintiff's supervisors allegedly instructed Plaintiff not to talk about overtime or ask for overtime wages, and Plaintiff was compelled not to keep track of her time when she was paid as an hourly employee. (*Id.*) Plaintiff further alleges that she was terminated from her employment with Defendants on account of the complaints she made regarding nonpayment of overtime wages. (*Id.* at 7).

On May 14, 2021, Plaintiff filed suit against Defendants in the District Court of Ottawa County, Oklahoma, asserting wage and retaliation claims under the FLSA against all Defendants, as joint employers. (*Id.* at 1, 5). Defendants removed the case to this Court on September 30, 2021 on the basis of federal question jurisdiction under 28 U.S.C. § 1331. After removal, Ms. Thind, individually, filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 22), arguing that Plaintiff has failed to plead facts sufficient to establish that Ms. Thind was Plaintiff's employer for purposes of the FLSA. (*Id.*) Specifically, Ms. Thind argues that the Plaintiff's allegations were merely a "formulaic recitation of the elements" that did not contain the "factual enhancement" necessary to plausibly infer that Ms. Thind was Plaintiff's employer within the meaning of the FLSA. (*Id.* at 3-4) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff counters that her Complaint properly alleges facts sufficient to plausibly establish that Defendants were joint employers for purposes of the FLSA by operating as a joint venture or general partnership under the Vapor Maven name. (Doc. 26 at 11-12).

## II.  MOTION TO DISMISS LEGAL STANDARD

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (internal citations omitted). A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Id.* at 555 (internal citations omitted) (alteration original). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

### III. DISCUSSION

An "employer" under the FLSA is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). "Courts are to construe the terms 'employee' and 'employer' expansively and an employee may have more than one employer responsible for the FLSA provisions." *Mason v. Miro Jewelers, Inc.*, 2020 WL 6828015, at *2 (D. Colo. Mar. 17, 2020) "Separate persons or entities that share control over an individual worker may be deemed joint employers under the FLSA." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984); *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006). All joint employers are responsible, both individually and jointly, for compliance with the FLSA. *Schultz*, 466 F.3d at 305. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan*, 747 F.2d at 972.

The Court is not aware of any Tenth Circuit precedent that articulates the test for determining whether a person or entity is considered a joint employer for purposes of the FLSA. *See Coldwell v. Ritecorp Env't Prop. Sols.*, 2017 WL 1737715, at *5 (D. Colo. May 4, 2017);

*Zachary v. Rescare Okla., Inc.*, 471 F. Supp. 2d 1175, 1178 (N.D. Okla. 2006). Ms. Thind argues that the proper inquiry for determining liability as a joint employer is the "economic realities" test, which focuses on the economic realities of the relationship between an alleged employer and employee by considering a number of factors, such as whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records. (Doc. 22 at 3) (citing *Tinnin v. Lesner*, 2021 WL 2853275, at *3 (D. Colo. July 7, 2021)). Plaintiff counters by citing this Court's joint employer test from *Miller v. Nordam Group, Inc.*, 2013 WL 6080268, *2-3 (N.D. Okla. Nov. 19, 2013). (Doc. 26 at 10-11). *Miller* analyzed Department of Labor (DOL) regulations in finding that a staffing agency was a joint employer for purposes of the Family Medical Leave Act.

Although each motion identified a different test, neither party explained their reasoning for their reliance on the different tests. With respect to the economic realities test, as articulated in *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) and cited by Ms. Thind, the Court notes that *Baker* applied the test to determine whether a worker was an employee or an independent contractor under the FLSA, which is a distinct inquiry.[1] By contrast, the issue before the Court in this case is whether Ms. Thind is properly considered a joint employer with the other Defendant entities. This question ultimately "turns on [her] relative association or disassociation *between entities* with respect to establishing the essential terms and conditions of [Plaintiff's] employment." *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017) (emphasis

---

1. While a number of courts in this Circuit have applied the economic realities test to the joint employer analysis, there has been considerable confusion over the applicable test and appropriate factors to consider under the test. *See Coldwell*, 2017 WL 1737715, at *5 (collecting cases and discussing confusion surrounding the economic realities test).

added).[2] Conversely, Plaintiff's reliance on *Miller* is misplaced insofar as it involved the Family Medical Leave Act, and more importantly, it analyzed DOL regulations to determine whether a staffing agency was considered a joint employer for purposes of satisfying the one-year employment eligibility requirement. 2013 WL 6080268 at *3 ("The policy behind this regulation is protection of the temporary employee."). While *Miller* is inapposite to the present case, the Court notes that Plaintiff appears to be focusing her joint employer analysis on Ms. Thind's shared control over the Vapor Maven enterprise—as opposed to merely her control over Plaintiff's

---

2. The Court notes that the joint employer test annunciated by the Fourth Circuit in *Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017) and *Salinas*, 848 F.3d at 141 focuses on the relationship between the alleged employers, rather than the relationship between the employee and the alleged employers. It examines a non-exhaustive list of six factors to determine whether an alleged joint employer "shares or codetermines the essential terms and conditions of a worker's employment." *Salinas*, 848 F.3d at 139. The six factors analyzed under the *Hall-Salinas* test include:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
> (3) The degree of permanency and duration of the relationship between the putative joint employers;
> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;
> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and
> (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id.* at 141-42.

employment. Thus, while the Court is not fully persuaded by either party's joint employer analysis, each of their arguments bear some merit.

The Court is not prepared to decide which test is most suitable for the joint employer analysis without more briefing on this specific issue. However, the Court need not decide the applicable test to resolve Ms. Thind's Motion because the Court finds that the Complaint has plausibly established Ms. Thind's status as a joint employer under the narrower economic realities test. *See Zevallos v. Stamatakis*, 2017 WL 6060623, at *3 (D. Utah Dec. 6, 2017) ("because Plaintiff[] ha[s]sufficiently alleged that [Ms. Thind] was a joint employer under either test, Plaintiff['s] claims will be analyzed using the narrower [economic realities] test"). In relevant part, the Complaint specifically alleges that Plaintiff was an employee; that Defendants, including Ms. Thind, assigned employees to various locations to cover shifts of absent employees; that Defendants, including Ms. Thind, exercised joint control over employees' duties, work location, hours, and employment terms and conditions; and Defendants, including Ms. Thind, had the power to hire and fire, supervise, and control employees' pay. (Doc. 2-2 at 4-6). The pleading requirements under Fed. R. Civ. P. 8 do not demand specific facts, as Ms. Thind suggests; rather, the "statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration original)). Although Plaintiff's Complaint does not provide the granular details of each specific allegation regarding Ms. Thind's status as a joint employer, it is impossible for Plaintiff to do so without the benefit of discovery. Moreover, the Court cannot say that Plaintiff's allegations "are sufficiently fantastic to defy reality as we know it." *Iqbal*, 556 U.S. at 696 (Souter, J., dissenting). Accordingly, Defendant Gurpreet K. Thind's Motion to Dismiss pursuant to Rule 12(b)(6), (Doc. 22) is **DENEID**.

**SO ORDERED** this 15th day of November, 2022.

_____<br>
TERENCE C. KERN<br>
United States District Judge