UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASMINE BARNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 21-CV-423-TCK-JFJ |
| VAPOR MAVEN OK 1, LLC; HARMINDER THIND; GURPREET K. THIND; FRESH LEAF, LLC; VAPOR MAVEN FRANCHISING, LLC; VAPOR MAVEN AR, LLC; VAPOR MAVEN MS, LLC; VAPOR MAVEN E-JUICE, LLC; JASLEEN ENTERPRISES, LLC; and MANAV ENTERPRISES, LLC, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Out-of-State Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(2), filed by Gurpreet K. Thind; Vapor Maven Franchising, LLC; Vapor Maven AR, LLC; Vapor Maven MS, LLC; Vapor Maven E-Juice, LLC; and Manav Enterprises, LLC (collectively Out-of-State Defendants). (Doc. 23). This case was removed from the District Court of Ottawa County, Oklahoma, pursuant to 28 U.S.C. § 1331, (Doc. 2), and thereafter, Defendant Gurpreet K. Thind individually filed a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (Doc. 22). Subsequent to the Rule 12(b)(6) Motion, Defendant Gurpreet Thind, along with the other Out-of-State Defendants, filed a separate Motion to Dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. (Doc. 23). The Court denied Defendant Gurpreet Thind's Rule 12(b)(6) Motion to Dismiss, (Doc. 32). The Court now turns to Out-of-State Defendants' Rule 12(b)(2) Motion to Dismiss.

In order to decide Out-of-State Defendants' Motion, the Court directed Plaintiff to file affidavits and any other written material to support her factual allegations regarding personal

jurisdiction over Out-of-State Defendants no later than November 21, 2022. (Doc. 31). On November 17, 2022, Plaintiff filed Supplemental Material in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, which included an affidavit and other documentary evidence. (Doc. 33). After having received leave of Court, Out-of-State Defendants filed a Supplemental Reply based on the evidentiary materials submitted by Plaintiff. (Docs. 34-36).

## I. FACTS

On May 14, 2021, Plaintiff Jasmine Barnett (Plaintiff) filed suit against Defendants in the District Court of Ottawa County, Oklahoma, asserting wage and retaliation claims under the FLSA against all Defendants, as joint employers. (Doc. 2-2 at 1, 5). According to the Complaint, Plaintiff was a Vapor Maven employee from April 2014 until October 7, 2019. (*Id.* at 5, 7). Plaintiff states that, though her job titles changed often during her employment, she "was a manager with broad responsibilities across all of the Vapor Maven stores and distribution centers." (Doc. 33-1 at 1, ¶ 2).

Vapor Maven is a self-described "strong vape-store chain" with nearly 100 stores across multiple states, including Oklahoma, Arkansas, Kansas, Texas, and Missouri. (Doc. 2-2 at 4). In addition to its retail operations, Vapor Maven also manufactures and distributes tobacco vapor products as well as cannabis and kratom plant products in locations where such products are legally sold. (*Id.*) Vapor Maven does not in itself exist as a corporate entity; rather, Plaintiff asserts that all Defendants operate, function, and conduct business as a joint venture or general partnership under the tradename "Vapor Maven." (Docs. 2-2 at 4; 27 at 2-4). In particular, the Complaint alleges that Defendants share in profits generated under the Vapor Maven name; share common property, market Vapor Maven products; operate business locations as Vapor Maven; require employees to wear Vapor Maven uniforms; provide employees with an email under the Vapor

Maven domain; require employees to conduct business on behalf of one or more of the other named Defendants in order to generate income under the Vapor Maven tradename; and shared in control over employees, including the power to hire, fire, supervise, schedule, and regulate conditions of employment. (Doc. 2-2 at 4-5). Defendants Harminder and Gurpreet Thind, according to Plaintiff, manage and oversee Vapor Maven employees and exert joint control over the Vapor Maven enterprise as husband and wife. (Doc. 27 at 4).

In their Motion to Dismiss, Out-of-State Defendants urge this Court to dismiss them from the case pursuant to Rule 12(b)(2) because they lack sufficient contacts with Oklahoma to support the exercise of personal jurisdiction over them. (Doc. 23 at 2). Specifically, Out-of-State Defendants underscore the fact that Plaintiff's FLSA claims relate to Jasleen Enterprises, LLC, which they assert was her "actual employer." (*Id.*) Out-of-State Defendants maintain that they never had an employment relationship with Plaintiff, made any hiring decisions related to Plaintiff, or made any decisions related to Plaintiff's compensation or schedule. (Doc. 23 at 4-5). Moreover, Out-of-State Defendants state that they do not own any property or reside in Oklahoma; that they do not maintain an Oklahoma phone number or mailing address; and that they do not keep or maintain any bank accounts in Oklahoma. (*Id.* at 3-4). To the extent that Out-of-State Defendants are corporate entities, owner and managing member Harminder Thind denies the existence of any business or employment relationship between Oklahoma and the Out-of-State Defendants, asserting that such Defendants are not registered with the Oklahoma Secretary of State, do not have or direct employees in Oklahoma, and do not have members or officers residing in Oklahoma. (Doc. 23-1). Out-of-State Defendants' Motion is supported by affidavits from Harminder Thind and Gurpreet K. Thind and Plaintiff's 2019 W-2 from Jasleen Enterprises, LLC. (Docs. 23-1, 23-2).

Plaintiff's Response counters that Out-of-State Defendants—as co-venturers in the Vapor Maven enterprise—are estopped from challenging personal jurisdiction because the Vapor Maven enterprise has sufficient contacts with the State of Oklahoma. (Doc. 27 at 10-11). Plaintiff underscores the fact that Vapor Maven operates 16 stores throughout Oklahoma, and it markets and sells its products online and in Oklahoma. (*Id.* at 11). Further, Plaintiff maintains that Vapor Maven employs Oklahoma residents, such as herself—a point that is reflected in Plaintiff's employment termination letter, in which Harminder Thind states that "*Vapor Maven* is terminating your employment." (Doc. 33-1 at 5) (emphasis added). Thus, Plaintiff concludes, Vapor Maven has sufficient contacts with Oklahoma to support personal jurisdiction. And although Plaintiff was nominally employed by Jasleen Enterprises, LLC, the "various entities did not operate in any distinct fashion from the 'Vapor Maven' concept." (*Id.* at 2, ¶ 10). Specifically, Plaintiff asserts that all of the named Defendants "shared employees, assets, [and] funds . . . indiscriminately, and freely shared anything Mr. or Mrs. Thind felt was needed to further the 'Vapor Maven' business." (*Id.* at 2, ¶ 11). In at least one instance, Plaintiff received a compensation check from Vapor Maven drawn from a Manav Enterprises bank account. (*Id.* at 3, ¶ 20). Plaintiff also mistakenly completed her worker's compensation application as an employee of Vapor Maven, rather than Jasleen Enterprises, LLC. (*Id.* at 59-60). In short, the point at which one Vapor Maven entity ended and the next began was virtually indistinguishable, and those entities should be treated as such for purposes of personal jurisdiction.

## II.  RULE 12(b)(2) LEGAL STANDARDS

In considering a motion to dismiss pursuant to Rule 12(b)(2), a court must determine whether the plaintiff has alleged sufficient facts to establish the court's jurisdiction over the defendant. Plaintiff bears the burden of establishing that the court has personal jurisdiction over

defendants. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998); *AST Sports Science, Inc., v. CLF Dist. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).

Trial courts are given "discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction." *Ten Mile Indus. Park v. Western Plains Serv.*, 810 F.2d 1518, 1524 (10th Cir.1987). Ordinarily, the issue of personal jurisdiction is decided at the outset, based on affidavits or other evidence sufficient to create a genuine issue of fact. *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965). When decided on the basis of affidavits and other written materials, plaintiffs need only make a prima facia showing, and the well pleaded facts of the complaint are accepted as true, provided they are uncontroverted by a defendant's affidavit. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). Where parties present conflicting affidavits, factual issues are resolved in the plaintiff's favor. *Id.*

"Whatever degree of proof is required initially, a plaintiff must have proved by the end of trial the jurisdictional facts by a preponderance of the evidence." *Fed. Deposit Ins. Corp.*, 959 F.2d at 174 (quoting *Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir. 1978) (alterations omitted)). Thus, when the trial court decides a personal jurisdiction challenge based on the pleadings and affidavits, it "is essentially a provisional ruling," and the plaintiff still must prove personal jurisdiction by a preponderance of evidence in the event the case proceeds to trial. *Racher v. Lusk*, 674 F. App'x 787, 790 (10th Cir. 2016).[1]

### III. DISCUSSION

As a preliminary matter, the Court notes at the outset that Defendant Gurpreet K. Thind filed two, separate motions to dismiss—first a motion under Rule 12(b)(6), (Doc. 22), and second,

---

[1]. Unpublished decisions are not precedential but may be cited for their persuasive value. *See* Fed. R. App. 32.1: 10th Cir. R. 32.1.

5

a motion under Rule 12(b)(2), (Doc. 23). While a party may join multiple Rule 12 defenses in a single motion, failure to raise the Rule 12(b)(2) defense in the first Rule 12 motion results in waiver of that defense under Fed. R. Civ. P. 12(h)(1). By failing to consolidate her Rule 12 defenses in a single motion and asserting her 12(b)(2) defense in a successive Rule 12 motion, Defendant Gurpreet K. Thind waived that defense. Accordingly, Defendant Gurpreet K. Thind's Motion to Dismiss under Rule 12(b)(2) must be DENIED. The Court now turns to the Motion to Dismiss with respect to the remaining Out-of-State Defendants, all of which are corporate entities, namely: Vapor Maven Franchising, LLC; Vapor Maven AR, LLC; Vapor Maven MS, LLC; Vapor Maven E-Juice, LLC; and Manav Enterprises, LLC.

**A. Minimum Contacts**

"The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citation omitted). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). The Due Process Clause prevents courts from exercising jurisdiction over a nonresident defendant unless "there exist 'minimum contacts' between the defendant and the forum state." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *OMI Holdings*, 149 F.3d at 1091). The "minimum contacts" standard can be satisfied in either of two ways: First, the court may exert specific jurisdiction over a defendant who has "purposefully directed his activities at residents of the forum," provided "the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (internal citations and quotation marks omitted). Alternatively, the court may maintain general personal jurisdiction over

a defendant who has maintained continuous and systematic general business contacts with the forum state. *Id.* In the present case, Plaintiff makes no argument regarding general jurisdiction, thereby conceding that general personal jurisdiction does not apply to the Out-of-State Defendants. Thus, the Court considers only whether Plaintiff has carried her burden of establishing specific jurisdiction over Out-of-State Defendants.

The central inquiry of a minimum contacts analysis is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297. "Whether a nonresident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996). "[I]t is well-established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state." *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990). Under an agency theory, such as a joint venture, "the minimum contacts of one co–venturer are attributable to other co–venturers such that personal jurisdiction over one means personal jurisdiction over all." *Hill v. Shell Oil Co.*, 149 F. Supp. 2d 416, 418 (N.D. Ill. 2001); *Certain Underwriters at Lloyd's, London v. Garmin Int'l Inc.*, 2012 WL 1158849, at *4 (D. Kan. Apr. 6, 2012). Consequently, a "defendant is precluded from challenging personal jurisdiction where it has claimed and held itself out to be part of a joint venture." *Luxton v. Leja*, 2016 WL 4997885, at *4 (N.D. Okla. Sept. 19, 2016) (citing *Garmin Int'l Inc.*, 2012 WL 1158849, at *4).

Under Oklahoma law, "[a] joint venture is generally a relationship analogous to, but not identical with, a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit." *Martin v. Chapel,*

7

*Wilkinson, Riggs, and Abney*, 637 P.2d 81, 85 (Okla. Civ. App. 1981). There are three elements necessary to establish the existence of a joint venture under Oklahoma law: "1) A joint interest in property (the contributions need not be equal or of the same character), 2) [a]n express or implied agreement to share profits and losses of the venture, [and] 3) [a]ction or conduct showing cooperation in the venture." *Le v. Total Quality Logistics, LLC*, 431 P.3d 366, 378 (Okla. Civ. App. 2018). The "chief characteristic of a joint venture" is a joint pursuit of profit, wherein profits are accrued jointly, but not severally. *Id.*

The Court finds that Plaintiff has sufficiently alleged facts that establish a joint venture between Defendants, including the Out-of-State Defendants, to carry out a vape-selling business as Vapor Maven. The evidence reviewed by the Court reflects that Defendants worked in coordination under the direction of Harminder Thind to set itself apart from the competition within the "profitable" vape-product market. (Doc. 33-1 at 8-11). Specifically, Vapor Maven repeatedly uses the words "we" and "our" in describing itself on the company's website and advertising materials, portraying a coordinated and integrated effort to seamlessly deliver products and services to customers under the banner of the "Vapor Maven family." (*Id.*) Evidence abounds of pooled resources among the various Vapor Maven entities, such as Plaintiff receiving at least some compensation from Vapor Maven—as opposed to Jasleen Enterprises, LLC—which was drawn from a Manav Enterprises bank account. (Doc. 33-1 at 3). What is more, the companies' supplies, including letterheads, uniforms, and employee handbook, are all under the Vapor Maven tradename, which suggests that the companies indiscriminately share their resources as a company, rather than as atomistic corporate entities.

Likewise, Vapor Maven job descriptions reveal centralized authority over Vapor Maven stores and pooling of resources among store locations and regions. For instance, Vapor Maven

office clerks "are responsible for the creation and upkeep of weekly employee schedule[s] at each store," as well as running any daily reports "necessary to get a full picture of each store's performance." (*Id.* at 62). Vapor Maven store auditors "are responsible for communication with the Human Resources Department regarding any terminations or new hires within their region"[2] and transfers of products between stores within a given region. (*Id.* at 63-64). Vapor Maven store managers are responsible for weekly communication with the Vapor Maven "Glass Department" and "Kratom Team" regarding inventory and proper stock of store products; and both the Glass Department or Kratom Team appear to service the Vapor Maven enterprise, rather than a specific state or region. (*Id.* at 68). Vapor Maven warehouse associates are responsible for ensuring that "valuable *company* assets are not mis-organized." (*Id.* at 69) (emphasis added). The Vapor Maven Inventory Manager is responsible for Kansas taxes, although it does not appear to be specifically Kansas based. (*Id.* at 61). Vapor Maven job descriptions further entail "completing the small/miscellaneous tasks that may pop up" or being on call to fill in at stores for absent employees." (Doc. 33 at 62, 65, 68, 69). Notably, all of the job descriptions are listed under the Vapor Maven tradename, with Harminder Thind (including his phone number) as the point of contact. (*Id.* at 65, 68).

Out-of-State Defendants argue that Plaintiff has failed to specifically tie evidence of the joint venture to each particular Out-of-State corporate entity; rather, Plaintiff is improperly attempting to lump all of the Out-of-State Defendants together and badly assert that they are joint venturers for purposes of personal jurisdiction. (Docs. 30 at 5; 37 at 3). "[G]iven the sophistication and complexity of today's corporate world," Defendants further argue, the common use of a

---

2. In the documents Plaintiff produced, Vapor Maven refers to "our Human Resources Department," making clear a centralized human resources department, shared by each subsidiary. (Doc. 33-1 at 45).

tradename does not establish "a single entity structure." (Doc. 30 at 6) (quoting *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 193 (S.D.N.Y. 2000)). Out-of-State Defendants caution that denying their Motion based on their use of the Vapor Maven tradename would be no different than hauling "the McDonald's Corporation and all of its tens of thousands of global franchisees before this Court simply upon averments . . . that the entities shared a tradename." (Doc. 30 at 1).

However, Plaintiff's evidence includes franchise advertising materials from its website, emails from the Thinds to Plaintiff regarding Manav Enterprises, and Vapor Maven employee handbook and job postings. The website advertisement continuously refers to the "Vapor Maven family," and it promotes Vapor Maven's offering of "extremely high quality products . . . and services" as an enticement for prospective franchisees. (Doc. 33 at 8-11). Other than Defendants' affidavits, which are contradicted by Plaintiff's evidence, there are no materials before the Court that would suggest that Vapor Maven product distribution is based on geographic location or subsidiary ownership. To the contrary, the job postings clearly reflect the centralized nature of the Vapor Maven products and management, irrespective of corporate entity status and geographic location. Given that Plaintiff was a purchasing manager for Vapor Maven, it does not strain credulity to infer that her services were performed for the benefit of the named corporate subsidiaries, under the direction—and to the benefit—of those corporate entities' owner and managing member, Harminder Thind. While Plaintiff's allegations with respect to each specific Out-of-State Defendant leaves something to be desired, the Court cannot say, at this stage of the litigation, that Plaintiff has not carried the "light" burden of establishing a joint venture among the named Defendants, who were jointly responsible for directing Plaintiff's employment. *AST Sports, Inc.*, 514 F.3d at 1056.

Moreover, while Out-of-State Defendants warn that this case is no different than Sprint or McDonald's corporations being hauled into court based on the actions of a subsidiary, Defendants overstate the reach of this Court's finding. All of the Out-of-State corporate Defendants are limited liability corporations owned and managed by Defendant Harminder Thind. The Court clearly has jurisdiction over Defendants Jasleen Enterprises, LLC, and Harminder Thind, and accepting Plaintiff's allegations as true, Jasleen Enterprises and Harminder Thind, along with the Out-of-State Defendants, directed Plaintiff's employment for the benefit of the Vapor Maven enterprise. Viewed in that light, Out-of-State Defendants cannot now challenge personal jurisdiction by virtue of the same corporate formalities that they allegedly failed to respect in directing Plaintiff's employment. In short, Vapor Maven is not a conglomerated multinational corporation. Viewed in a light most favorable to Plaintiff, Vapor Maven is a family business, run by a husband-and-wife, who own and control a number of companies with the purpose of manufacturing, distributing, and selling vape-products across multiple retail stores in the Midwest. Plaintiff is not seeking to haul every Vapor Maven franchisee into Court, only the individuals and entities within the Vapor Maven enterprise that she alleges directed her employment, from which her claims arise.

Thus, the Court finds that Plaintiff has carried her burden of establishing a joint venture among the named Defendants for purposes of personal jurisdiction, and because her claims arise from her employment with the Vapor Maven joint venture, she has sufficiently established the requisite minimum contacts to overcome Out-of-State Defendants' Rule 12(b)(2) challenge.

**B. Reasonableness**

Next, the Court must consider whether its "exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *OMI Holdings, Inc.*, 149 F.3d at 1091. In considering the reasonableness of exercising

11

personal jurisdiction, the Court weighs the following factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings, Inc.*, 149 F.3d at 1095. "A defendant must present a compelling case that factors like these render jurisdiction unreasonable." *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1289 (10th Cir. 2020), *cert. denied*, 210 L. Ed. 2d 927, 141 S. Ct. 2793 (2021) (internal quotation marks omitted). Though the reasonableness inquiry rarely defeats the exercise of personal jurisdiction, it nevertheless "evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (quoting *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1291 (10th Cir. 2007)) (alterations omitted).

Here, Out-of-State Defendants contend that the burden on them to litigate this case in Oklahoma alone is sufficient to justify dismissal, given that they have no contacts with the State. (Doc. 23 at 10). They concede Oklahoma's interest in redressing employment claims by its residents, but they assert that there is no evidence that her "relief would be hampered by dismissal" of Out-of-State Defendants. (*Id.* at 11). To that end, "[h]auling six defendants with virtually no contacts with Oklahoma and with no connection to the plaintiff's cause of action . . . does not serve Oklahoma nor does it promote the shared interest of Oklahoma, Arkansas, and Missouri." (*Id.*)

The reasonableness factors weigh in favor of exercising personal jurisdiction over Out-of-State Defendants, even when evaluated with a particularly solicitous scale. First, Out-of-State corporate Defendants' assertion that litigation in Oklahoma would be burdensome on them and

that they have no connection to Oklahoma is difficult to square, given that their owner and managing member, Harminder Thind, will already be involved in litigation of this case. Although Harminder Thind alleges that none of the Out-of-State corporate Defendants' anticipated witnesses reside in Oklahoma, (Doc. 23-1 at 5, ¶ 20), he does not state whether he anticipates calling any out-of-state witnesses at trial—let alone, out-of-state witnesses that would not be called but for Out-of-State Defendants' involvement in this case.

Second, all of the named Defendants—including Out-of-State Defendants—are presently litigating a case in Ottawa County, Oklahoma, based on Plaintiff's state-law claims. *See Barnett v. Vapor Maven OK 1, LLC, et al.*, Case No. CJ-2020-57 (Ottawa Cnty.), filed March 19, 2020 (OSCN). Of note, Out-of-State Defendants did not challenge personal jurisdiction in that case. Aside from reminding the Court that personal jurisdiction in one case does not necessarily imply personal jurisdiction in another case, (Doc. 30 at 5, n. 1), Out-of-State Defendants offer no explanation about why it would be any more unreasonable to litigate in this forum than it is to litigate state-law claims in the same state against the same plaintiff.

Third, Oklahoma has a strong interest in ensuring its citizens have access to full redress of their labor claims, which may be imperiled if the Court were to hive off Out-of-State defendants, who are alleged to have directed and controlled Plaintiff's employment with Vapor Maven. The Court notes that the United States Department of Labor's Wage and Hour Division investigated and fined Jasleen Enterprises, LLC, doing business as Vapor Maven, for FLSA violations.[3] Plaintiff should be entitled to prosecute her claims in a like-manner and avoid the piecemeal relief that flows from dismissing Out-of-State Defendants before reaching the merits of Plaintiff's

---

3. *See* Press Release, U.S. Dep't of Lab. Wage and Hour Div., Investigation Results in Vaping Shop Retailer Paying $63,842 in Back Wages (Oct. 17, 2019), https://www.dol.gov/newsroom/releases/whd/whd20191017-0.

13

claims. Defendants are free to dispute Plaintiff's allegations, but the Court finds that it would be more appropriate to address those disputes on the merits, rather than at this stage of the litigation.

In light of the foregoing considerations, the Court finds that the exercise of personal jurisdiction over Out-of-State Defendants is not so unreasonable that it offends "traditional notions of fair play and substantial justice." *TH*, 488 F.3d at 1287 ("[I]f the defendant has sufficient minimum contacts, we ask whether the court's "exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'") (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). To the contrary, the Court finds that it is imminently reasonable under the circumstances, and thus, Out-of-State Defendants' Motion must be DENIED.

### IV. CONCLUSION

Pursuant to Fed. R. Civ. P. 12(h)(1), Defendant Gurpreet K. Thind waived her Rule 12(b)(2) defense because she failed to consolidate her Rule 12(b)(2) Motion with her Rule 12(b)(6) Motion. Further, the Court finds that Plaintiff has established a prima facie joint venture among named Defendants in this case, doing business as Vapor Maven. Because Plaintiff's claims arise out of her employment by the Vapor Maven joint venture, she has established minimum contacts for purposes of exercising personal jurisdiction over corporate Out-of-State Defendants. Additionally, the Court finds that the exercise of personal jurisdiction over such Defendants is reasonable under the circumstances. Accordingly, Out-of-State Defendants' Rule 12(b)(2) Motion to Dismiss (Doc. 23) is **DENIED**.

**SO ORDERED** this 16th day of December, 2022.

TERENCE C. KERN
United States District Judge